IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No. 4:18-cr-00119-JAJ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT'S SENTENCING |
| BREE DEONTEZ WRIGHT, | ) | MEMORANDUM AND BRIEF |
| | ) | |
| Defendant. | ) | |

COMES NOW, BREE DEONTEZ WRIGHT, through counsel, and submits the following sentencing memorandum and brief for his sentencing hearing on December 20, 2018.

## I. Witnesses

Defendant does not anticipate calling any witnesses at the sentencing hearing.

## II. Exhibits

Defendant offers the following exhibit for the sentencing hearing:

Exhibit A – Letter from Osheana Harrison with photos.

## III. Issues

Mr. Wright is withdrawing a number of objections to the PSR, so there are no guideline issues in dispute. Mr. Wright requests this Court sentence him to the statutory mandatory minimum sentence.

Mr. Wright withdraws the following objections that he previously made to the PSR:

Paragraph 6 – regarding the description of him as a pimp.

Paragraph 7 – regarding the description of him as a pimp and that he did not collect proceeds from Minor Victim #1.

1

> Paragraph 9 – regarding no knowledge of Minor Victim #1's schedule and with whom she set up meetings.
>
> Paragraphs 10-14, 22, 26, 30, 124, and 139.

**A.  A Sentence of Ten Years is Appropriate in this Case Based on the History and Characteristics of the Defendant, the Need to Provide Adequate Deterrence, and the Need to Protect the Public.**

Mr. Wright acknowledges the wrongs he has done that have him before this Court; which is why he pled guilty to the offense. Mr. Wright made a number of PSR objections to clarify the facts in this case. While he in no way is attempting to minimize his guilt, he does want the Court to understand the actual facts that transpired.

Defense counsel is aware that Fed. R. Crim. P. 32(i)(3)(B) requires a district court to make specific findings as to each controverted material fact in the PSR or to determine that no such finding is necessary because the controverted fact will not be taken into account in sentencing. There are several objections to the facts that do not necessarily have to be resolved, but that Mr. Wright could not agree were true.

Mr. Wright met Minor Victim #1 and did not know her age. He therefore began a relationship with her. When Mr. Wright found out her age, he ended the relationship. Mr. Wright did not force Minor Victim #1 into prostitution, however he did facilitate it, and that is why he pled guilty to this offense. With regard to the instant offense, Joyce Williams set everything up. She called Mr. Wright to get in contact with Minor Victim #1 per Joyce's request. Minor Victim #1 actually picked up Mr. Wright, and then Mr. Wright drove the car to pick up Joyce Williams. Mr. Wright then drove all of them to the motel.

In determining proportionality and what a just sentence is for Mr. Wright, a sentence of ten years adequately addresses his criminal conduct. Mr. Wright understands he deserves

punishment. A felony conviction and a sentence of ten years is sufficient punishment for this offense. Mr. Wright is a young man and hopefully has a long life ahead of him. He certainly wants to have the opportunity to be there for his children so that they can have a better life than he has had.

Mr. Wright's childhood is heartbreaking. He was beaten by his mother, and his father in turn, abused his mother. PSR ¶ 53. From as young as four or five years old, Mr. Wright was homeless and bouncing between shelters and friends of his mother. *Id*. During that vulnerable time, Mr. Wright was sexually abused by family members. *Id*. at 54. Mr. Wright never received counseling for this abuse. Mr. Wright's father was in prison and never acted in a parental role. His example was one of domestic abuse and drug addiction. PSR ¶ 56. The abuse and neglect by Mr. Wright's mother has left an indelible mark on Mr. Wright. She could not provide for the basic needs of her children and at times stole clothes for them. Mr. Wright resorted to stealing other children's lunches so that he would have food to eat. Finally, when Mr. Wright was seven, DHS got involved and removed him to a foster home, splitting him up from his siblings. Mr. Wright's mother has a history of mental illness, substance abuse, and criminal convictions. PSR ¶ 57. At the time he was finally removed from his parents, Mr. Wright was diagnosed with depression and ADHD. PSR ¶ 89. He also developed life-lasting trust issues with females that resulted from the difficult relationship with his mother.

While at the foster homes, Mr. Wright was mistreated until he was finally adopted by extended family at the age of ten or eleven. This was a better living situation than he had been in a number of years, but he was still treated like an inferior compared to his adopted parents' biological children. His adoptive father also has criminal history and substance abuse issues.

PSR ¶ 58. At the age of fifteen, Mr. Wright moved back in with his mother, and bounced between there and an aunt's house. The majority of Mr. Wright's adult siblings also have criminal histories, substance abuse, and mental health issues. PSR ¶¶ 60-73.

With such a lack of care and supervision, it is not surprising that Mr. Wright started using marijuana and alcohol at the age of fourteen. PSR ¶¶ 95-96. Mr. Wright was doing what he needed to survive, and essentially was on his own at a young age. Misfortune found him when he was shot in the hand at the age of seventeen, for which he still has lingering effects. PSR ¶ 84. His criminal history started soon after that, with possession of marijuana. Mr. Wright, suffering from untreated mental illness, dropped out of high school, and escalated his drug use, which led to a downslide culminating in this conviction. Mr. Wright has now been diagnosed with major depression and bipolar disorder. PSR ¶ 91. He has had suicidal thoughts since his childhood, and has attempted suicide on one occasion. PSR ¶ 92.

Given his background and his daily cocaine addiction, it is actually surprising that Mr. Wright does not have more criminal history in his young life. This is by far the most serious offense he has committed, and is already the longest time he has been incarcerated. He has had seven months to sober up, reflect on his past, and make goals for the future. He would like to get his GED and additional schooling, and would like treatment to help overcome his substance abuse problems.

Mr. Wright currently has nine children. He has suffered through the tragic loss of a child. Despite everything in his life that has gone wrong, he is devoted to his children. He knows from personal experience the devastating impact of what an abusive and neglectful childhood can have on a person's life. He has made it his mission to make sure the circumstances for his children

will be different. Mr. Wright has tremendous support from his family. The letters from Osheana Harrison detail the dedicated father that he is to his children. *See* Def. Ex. A.

**B.      Mr. Wright Objects to Some of the Special Conditions for Supervised Release.**

It is because of his large family and his strong family support system that Mr. Wright objects to the special conditions in PSR ¶¶ 140-141. He would like to be able to attend family functions when he is released from prison. Mr. Wright understands that he will have to register as a sex offender and abide by those restrictions. He does not believe an additional special condition is necessary that will restrict his ability to participate in family gatherings absent probation's permission. This is not a case involving a pedophile or deviant sexual attraction. This defendant is not a pedophile. Pedophilia is a psychiatric disorder in which an adult or older adolescent experiences a primary or exclusive sexual attraction to prepubescent children, generally age eleven years or younger. (DSM-5). That is clearly not the case with Mr. Wright.

This is also not a case of statutory rape. This is a case involving prostitution or being a pimp, neither of which is recognized as a sexual disorder in need of treatment.

It is the defense's position that probation recommends the same blanket conditions for anyone convicted of any sex offense. As this court is aware, a blanket imposition of sex offender conditions for anyone convicted of a sex offense is not permitted. *See United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006). To ensure that each special condition of supervised release imposed satisfies the requirements of 18 U.S.C. § 3583(d), the district court is required to "make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as 'to ensure that the special condition satisfies the statutory requirements.'" *United States v. Wiedower*, 634 F.3d 490, 493 (8th Cir. 2011) (internal citation

omitted). Therefore, sex offender treatment is not necessary, and we ask that the special conditions in PSR ¶ 140-141 not be imposed.

Mr. Wright also objects to the condition in PSR ¶ 144 that indicates he cannot frequent a hotel, motel, or temporary lodging without written permission from his probation officer. This condition is unduly burdensome on Mr. Wright, a person who has often been without a steady residence. To require him to get written permission every time he needs to get temporary lodging is onerous, not practicable, and there is no legitimate reason to institute this restriction.

Finally, Mr. Wright objects to the conditions in PSR ¶¶147-148 regarding restrictions on his financial affairs. Mr. Wright was not convicted of a financial crimes and therefore does not believe these conditions are appropriate or necessary given the crime of conviction.

## C.     Mr. Wright Should Not be Assessed $5,000 Under 18 U.S.C. § 3014.

The special assessment authorized by 18 U.S.C. § 3014(a) is to be assessed only against "non-indigent" persons convicted of certain enumerated offenses during a specific time period. In relevant part, § 3014 provides:

> (a)    in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under…
>
> (3)    chapter 110 (relating to sexual exploitation and other abuse of children);
>
> (4)    chapter 117 (relating to transportation for illegal sexual activity and related crimes);

18 U.S.C. § 3014(a).

The plain language of the statute unambiguously states the $5,000 assessment is to be assessed only against *non-indigent* persons. In 18 U.S.C. § 3013, Congress dictated an

6

assessment on "any person convicted." Congress's use of different language in § 3014(a) is a clear directive that the assessment be imposed only on those who are not indigent. Section 3014(a) is silent on the method of determining indigence.

Mr. Wright has a negative net worth (PSR ¶¶ 117-122), and he asserts that he is "indigent" for purposes of determining if the $5,000 special assessment should be applied in his case. At his initial appearance, the court determined Mr. Wright met the standard for indigency such that he qualified for court-appointed counsel. To this day, he continues to be represented by such counsel. Mr. Wright has been incarcerated since May 2, 2018. While Mr. Wright would like to establish employment when he is released, it is likely that because of his conviction and the restrictions for employment for sex offenders, he will have difficulty in finding employment. He does not own any real property, and he did not complete high school. PSR ¶¶ 117 and 104. The PSR also concludes that Mr. Wright does not have the ability to pay a financial penalty. PSR ¶ 122.

The Eighth Circuit has held that both a defendant's "current financial situation and his ability to pay in the future are appropriate consideration in determining his 'non-indigent' status." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). But Congress intentionally selected the term "indigent" to the exclusion of other available terms. This evidences an intent to limit the scope of the inquiry to current financial status, consistent with the widely accepted meaning of "indigent." Had Congress intended to include defendants who were currently indigent, yet had the future ability to work, they either would have subjected "any person convicted" to the $5,000 special assessment, or would have expressly directed that a forward-looking inquiry be employed. Congress, however, did not do so. Further, the Eighth Circuit's

holding in *Kelley* creates a speculative approach regarding future earning potential. Truly, almost any defendant has *some* potential for future earnings. This does not mean that he or she cannot still be indigent in the present moment. A district court's or a probation officer's conclusion that a defendant may be employable in the future ignores that a conviction which triggers application of the Justice for Victims Trafficking Act may include a lengthy prison sentence, and is not evidence of future ability to pay, without more.

Nonetheless, Mr. Wright acknowledges that this Court is bound by Eighth Circuit precedent regarding what factors to consider. Even so, Mr. Wright's status is different than that of the defendant in *Kelley¸* who sold a residence valued at approximately $98,000 prior to sentencing, who claimed to know nothing of the profit made from the sale, and who was an "Eagle Scout with a college degree." *Id.* at 802. *See also United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (upholding imposition of the assessment on a defendant who was employed full time and was welcome to continue living with his family). As previously stated, Mr. Wright has been incarcerated since May 2018. He is single, does not have a high school diploma, and has a negative net worth.

This Court should conclude that Mr. Wright is indigent, and not impose a $5,000 special assessment as set forth in 18 U.S.C. § 3014.

IV. Conclusion

Mr. Wright knows what he did was wrong and he will be punished for his actions. He asks that the Court sentence him to the statutory mandatory minimum, so that after spending the next ten years in prison, Mr. Wright can return to society and be a productive, hard-working citizen, and support his family.

Respectfully Submitted,

 */s/ Melanie S. Keiper*
MELANIE S. KEIPER
Assistant Federal Public Defender
FEDERAL DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
Phone: (515) 309-9610
Fax: (515) 309-9625
Email: melanie_keiper@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2018, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

 */s/ Morgan Conn*, Paralegal